## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

FILED IN OPEN COURT

JAN 30 2026

CHRISTOPHER EKMAN
CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 25-00073-TFM |
| | ) | |
| NIA BRADLEY | ) | |

### PLEA AGREEMENT

The defendant, **NIA BRADLEY**, represented by counsel, and the United States of America have reached a Plea Agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

### RIGHTS OF THE DEFENDANT

1.      The defendant understands the defendant's rights as follows:

      a.      To be represented by an attorney;

      b.      To plead not guilty;

      c.      To have a trial by an impartial jury;

      d.      To confront and cross-examine witnesses and to call witnesses and produce other evidence in the defendant's defense; and

      e.      To not be compelled to self-incriminate.

### WAIVER OF RIGHTS AND PLEA OF GUILTY

2.      The defendant waives rights b through e, listed above, and pleads guilty to:

      a.      Count One of the Indictment, charging a violation of Title 18, United States Code, Section 1349, Conspiracy to Commit Mail, Wire, and Bank Fraud;

      b.      Count Two of the Indictment, charging a violation of Title 18, United States Code, Section 371, Conspiracy;

1

Rev. 9/2025

     c.      Count Three of the Indictment, charging a violation of Title 18, United States Code, Section 1956(h), Money Laundering Conspiracy;

     d.      Count Four of the Indictment, charging a violation of Title 18, United States Code, Section 1343, Wire Fraud;

     e.      Count Twelve of the Indictment, charging a violation of Title 18, United States Code, Section 1344(2), Bank Fraud; and

     f.      Count Twenty-Nine, charging a violation of Title 26, United States Code, Section 7206(1), Willful and Material Misstatement in a Tax Document.

3.     The defendant understands that the statements the defendant makes under oath in the plea of guilty must be completely truthful and that the defendant can be prosecuted for making false statements or perjury, or receive a perjury enhancement at sentencing, for any false statements the defendant makes intentionally in this plea of guilty.

4.     The defendant expects the Court to rely upon the defendant's statements here and the defendant's responses to any questions that the defendant may be asked during the guilty plea hearing.

5.     The defendant is not under the influence of alcohol, drugs, or narcotics. The defendant is certain that the defendant is in full possession of the defendant's senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing that will follow.

6.     The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. The defendant has discussed the facts of the case with the defendant's attorney, and the defendant's attorney has explained to the defendant the essential

2

legal elements of the criminal charges that have been brought against the defendant. The defendant's attorney has also explained to the defendant the attorney's understanding of the United States' evidence and the law as it relates to the facts of the defendant's offenses.

7.    The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charges beyond a reasonable doubt. The defendant and the defendant's counsel have discussed possible defenses to the charges. The defendant believes that the defendant's attorney has represented the defendant faithfully, skillfully, and diligently, and the defendant is completely satisfied with the legal advice of the defendant's attorney.

8.    A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct. Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and the defendant's counsel are not part of this agreement and are not agreed to by the United States.

9.    This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. The defendant is pleading guilty because the defendant is guilty.

10.    The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation

or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## **PENALTY**

11.     The defendant understands that the penalty the Court could impose as to Count One of the Indictment is:

a.     A maximum sentence of thirty (30) years of imprisonment;

b.     A fine not to exceed $1,000,000;

c.     A maximum term of supervised release of five (5) years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, the defendant could be imprisoned for the entire term of supervised release;

d.     A mandatory special assessment of $100.00;

e.     Such restitution as may be ordered by the Court; and

f.     Such forfeiture of property as may be ordered by the Court.

12.     The defendant understands that the penalty the Court could impose as to Count Two of the Indictment is:

a.     A maximum sentence of five (5) years of imprisonment;

b.     A fine not to exceed $250,000;

c.     A maximum term of supervised release of three (3) years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, the defendant could be imprisoned for the entire term of supervised release;

d.     A mandatory special assessment of $100.00;

e.      Such restitution as may be ordered by the Court; and

f.      Such forfeiture of property as may be ordered by the Court.

13.     The defendant understands that the penalty the Court could impose as to Count Three of the Indictment is:

a.      A maximum sentence of twenty (20) years of imprisonment;

b.      A fine not to exceed $500,000 or twice the value of the property involved, whichever is greater;

c.      A maximum term of supervised release of three (3) years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, the defendant could be imprisoned for the entire term of supervised release;

d.      A mandatory special assessment of $100.00;

e.      Such restitution as may be ordered by the Court; and

f.      Such forfeiture of property as may be ordered by the Court.

14.     The defendant understands that the penalty the Court could impose as to Count Four of the Indictment is:

a.      A maximum sentence of twenty (20) years of imprisonment;

b.      A fine not to exceed $250,000;

c.      A maximum term of supervised release of three (3) years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, the defendant could be imprisoned for the entire term of supervised release;

d.      A mandatory special assessment of $100.00;

Rev. 9/2025

      e.      Such restitution as may be ordered by the Court; and

      f.      Such forfeiture of property as may be ordered by the Court.

15.     The defendant understands that the penalty the Court could impose as to Count Twelve of the Indictment is:

      a.      A maximum sentence of thirty (30) years of imprisonment;

      b.      A fine not to exceed $1,000,000;

      c.      A maximum term of supervised release of five (5) years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, the defendant could be imprisoned for the entire term of supervised release;

      d.      A mandatory special assessment of $100.00;

      e.      Such restitution as may be ordered by the Court; and

      f.      Such forfeiture of property as may be ordered by the Court.

16.     The defendant understands that the penalty the Court could impose as to Count Twenty-Nine of the Indictment is:

      a.      A maximum sentence of three (3) years of imprisonment;

      b.      A fine not to exceed $250,000;

      c.      A maximum term of supervised release of one (1) year, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, the defendant could be imprisoned for the entire term of supervised release;

      d.      A mandatory special assessment of $100.00;

      e.      Such restitution as may be ordered by the Court; and

Rev. 9/2025

f.    Such forfeiture of property as may be ordered by the Court.

## SENTENCING

17.    The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with the defendant's attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant represents that no one has promised or assured the defendant of a particular sentence, and the defendant understands and agrees that the defendant cannot treat any estimate of a sentence as binding in any respect. The defendant understands that the defendant will not be allowed to withdraw the defendant's guilty plea if the advisory guideline range is higher than expected, if the Court departs or varies from the advisory guideline range, or if the sentence otherwise differs from the defendant's expectations.

18.    The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

19.    The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing

7

information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

20.     Both the defendant and the United States are free to allocute fully at the time of sentencing.

21.     The defendant agrees to tender $100.00 per count of conviction to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations to which it may agree within this document if the defendant fails to pay the special assessment prior to or at the time of the defendant's sentencing.

22.     The United States, in its sole discretion, may oppose any adjustment for acceptance of responsibility if the defendant: (1) fails to admit each and every item in the Factual Resume; (2) denies involvement in the offenses; (3) gives conflicting statements about the defendant's involvement in the offenses; (4) is untruthful with the Court, the United States, law enforcement, or the United States Probation Office; (5) obstructs or attempts to obstruct justice prior to sentencing; (6) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (7) attempts to withdraw the defendant's plea of guilty for any reason other than those expressly enumerated in the "Limited Waiver of Right to Appeal and Waiver of Collateral Attack" section of this Plea Agreement.

## **RESTITUTION**

23.     Pursuant to 18 U.S.C. §§ 3556 and 3663A, restitution is mandatory in some cases. The defendant agrees to make full restitution as to all relevant conduct regardless of whether it relates to the counts of conviction.

8

Rev. 9/2025

*The parties agree to litigate forfeiture separately from this Plea Agreement.*

**FORFEITURE**

*KSH*

*G*

*NB*

24. ~~The defendant agrees to forfeit to the United States, via an administrative or judicial proceeding, all assets listed in the charging document/bill of particulars, as well as all assets seized during this investigation or a related investigation. The defendant consents to the filing of a motion for a preliminary order forfeiting such assets and any dollar amount specified in the charging document/bill of particulars. The defendant also consents to the filing of a motion for substitute assets up to the amount of proceeds obtained from the commission of the offenses of conviction. The defendant admits there is a sufficient factual nexus between the assets subject to forfeiture and the offenses of conviction. The defendant hereby withdraws any petition for remission or claim for these assets and waives any right to contest, appeal, or collaterally attack the government's forfeiture proceedings on any ground including that the forfeiture constitutes an unconstitutionally excessive fine or punishment. The defendant consents to the United States entering the final order of forfeiture into the Treasury Offset Program. Finally, the defendant agrees to the abandonment of the defendant's interest, if any, in any assets seized during this investigation or a related investigation that are not forfeited to the United States.~~

**FORFEITURE IN A VICTIM CASE**

25.    The United States Attorney's Office for the Southern District of Alabama will recommend to the Attorney General that any net proceeds derived from the sale of any judicially forfeited assets be remitted or restored to eligible victims of the offenses for which the defendant pleaded guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and any other applicable laws, if the United States determines, in its

9

sole discretion, that the legal requirements for such recommendation are met. However, the defendant understands that the United States Attorney's Office only has authority to recommend such relief and that the final decision of whether to grant relief rests solely with the Department of Justice, which will make its decision in accordance with applicable law.

## FINANCIAL OBLIGATIONS

26. The defendant expressly authorizes the United States Attorney's Office for the Southern District of Alabama to obtain a credit report to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. To facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party or entity, and whether held in this country or outside this country. Accordingly:

   a. Upon request, the defendant will submit a completed Financial Statement to the United States Attorney's Office, in a form it provides and as it directs. The defendant promises that the financial statements and any disclosures the defendant makes on it will be complete, accurate, and truthful. The defendant further agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the defendant's disclosures, such releases to be valid for a period extending 90 days from the date of sentencing. The defendant also authorizes the

Rev. 9/2025

United States Attorney's Office to inspect and copy all financial documents and information held by the United States Probation Office.

b.      The defendant will provide a waiver of the defendant's privacy protections to expressly authorize the United States Attorney's Office to access the defendant's credit report and tax information held by the Internal Revenue Service to evaluate the defendant's ability to satisfy any monetary penalty imposed by the Court.

c.      The defendant agrees not to transfer, assign, dispose, remove, conceal, pledge as collateral, waste, or destroy property to defraud the United States and any victims, or to hinder, delay, or prevent the satisfaction of any monetary penalty imposed by the Court.

## UNITED STATES' OBLIGATIONS

27.     The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss any remaining charges against the defendant once sentence is imposed in this case. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

28.     The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range as determined by the Court. The United States fully reserves its right to argue and present evidence on the appropriate guideline range and the applicability of any guideline enhancements.

11

Rev. 9/2025

**APPLICATION OF U.S.S.G. § 5K1.1, FED. R. CRIM. P. 35, AND/OR 18 U.S.C. § 3553(e)**

29.    The defendant understands and agrees that the defendant has no right to cooperate, and that the decision whether to allow the defendant to cooperate is reserved solely to the United States in the exercise of its discretion. If the United States agrees to allow the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply:

a.    The defendant shall fully, completely, and truthfully respond to all questions put to the defendant by law enforcement authorities regarding the underlying facts of the offenses with which the defendant is charged, as well as the underlying facts of any criminal offenses, state or federal, of which the defendant has information or knowledge.

b.    The defendant acknowledges and understands that the defendant shall provide truthful and complete information regarding any offenses about which the defendant has knowledge or information regardless of whether law enforcement authorities question the defendant specifically about any such offenses. This provision requires the defendant to divulge all information available to the defendant even when law enforcement authorities do not know about the defendant's involvement, knowledge, or information relating to any particular offense. This requirement extends to any and all persons about whom the defendant has such knowledge or information.

c.    The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which the defendant's cooperation may be

Rev. 9/2025

deemed relevant by any law enforcement authority. The defendant agrees to comply fully with all instructions from law enforcement authorities regarding the specific assistance the defendant shall provide. This includes, but is not limited to, wearing/carrying an undercover recording device, consenting to monitored and/or recorded telephone conversations, providing law enforcement with the password(s) to the defendant's cell phones, social media accounts, and any other electronic devices or accounts, participating in undercover operations, and testifying completely and truthfully before any grand jury, at any pre-trial proceeding, during any trial, and at any post-trial proceeding.

d.    If the United States deems it necessary, the defendant may be required to take a polygraph examinations, which will be administered by a government polygrapher. The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

e.    The defendant agrees to turn over to the United States any and all documents, records, files, and other tangible objects that are in the defendant's possession or under the defendant's control and that are relevant to the defendant's participation in and knowledge of criminal activities, regardless of whether the materials relate to the charged offenses.

13

Rev. 9/2025

This obligation is a continuing one and includes materials that the defendant may acquire, obtain, or have access to after the execution of this agreement.

f.    The defendant also agrees to identify the assets of any other person that were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g.    If the defendant provides full, complete, truthful, and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another person who has committed an offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States, in its sole discretion, deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. To the extent a minimum mandatory sentence is applicable, the United States reserves its right to make any departure request pursuant to Section 5K1.1 of the United States Sentencing Guidelines, Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3553(e), or any combination of these provisions, in its sole discretion. The defendant understands that any motion under 18 U.S.C. § 3553(e), if deemed appropriate by the United States in its sole discretion, will only be made by

Rev. 9/2025

the United States in conjunction with a departure request pursuant to Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, and will not be made independently of Section 5K1.1 or Rule 35. The defendant understands that the United States will make no representation or promise regarding the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. The defendant understands that a mere interview or interviews with law enforcement authorities does not constitute substantial assistance and will not, standing alone, be the basis for a motion for sentence reduction. The defendant understands that merely entering a plea of guilty does not constitute substantial assistance and will not, standing alone, be the basis for a motion for sentence reduction. The defendant also understands that, should the defendant provide untruthful information to the United States at any time, or fail to disclose material facts to the United States at any time, or commit a new criminal offense, the United States will not make a motion for sentence reduction. If the defendant's effort to cooperate with the United States does not amount to substantial assistance in the investigation or prosecution of another person who has committed an offense, as determined solely by the United States, then the United States agrees to recommend that the defendant receive any sentence that the United States otherwise has recommended the defendant to receive under this Plea Agreement.

Rev. 9/2025

h.  The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, whether charged or uncharged, failing to cooperate, intentionally withholding information, giving false information, committing perjury, failing to identify assets obtained by the defendant from the defendant's illegal activities or obtained by others associated with the defendant or of which the defendant has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

(1)  permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Indictment; and

(2)  permit the United States to initiate and proceed with the prosecution on any other charges arising from a breach of this agreement. The United States will not be limited, in any respect, in the use it may make against the defendant of any information provided by the defendant during the defendant's breached cooperation. Such breach will constitute a waiver of any claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, the Speedy Trial Act, or any statute or case law by which the defendant seeks to suppress the use of such information, or any evidence derived from such information.

16

i.   Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during the defendant's cooperation. The defendant acknowledges and agrees that the information that the defendant discloses to the United States pursuant to this agreement may be used against the defendant in any such prosecution.

j.   The United States and the defendant agree that the defendant will continue cooperation pursuant to this agreement even after the defendant is sentenced in the instant matter. The defendant's failure to continue cooperation pursuant to this agreement will constitute a breach of this agreement, and the defendant agrees that under such conditions, the United States will be free to reinstate and prosecute any charge in the Indictment that is to be dismissed in accordance with this agreement. Under these circumstances, the defendant expressly waives any rights the defendant may have under any applicable statute of limitations and the speedy trial provisions.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

30.   As part of the bargained-for exchange represented in this Plea Agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the

Rev. 9/2025

defendant will not challenge the defendant's guilty plea, conviction, or sentence in any district court or appellate court proceedings.

>    **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

>    (1)    any sentence imposed in excess of the statutory maximum;

>    (2)    any sentence that constitutes an upward departure or variance from the advisory guideline range.

>    The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

31.    If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

32.    The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines that would affect the sentence.

33.    If the defendant receives a sentence within or below the advisory guideline range, this Plea Agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

34.    The defendant understands that if the United States determines the defendant has breached any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement will remain enforceable against the defendant. In the exercise of its discretion, the

18

United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that the defendant might have under the Sixth Amendment and/or the Speedy Trial Act.

35.     In addition, if the defendant is released from detention prior to sentencing, the defendant understands that the United States will no longer be bound by this agreement if the defendant violates any condition of the defendant's release prior to sentencing or prior to serving the defendant's sentence after it is imposed. If the defendant is in custody and engages in criminal conduct between the date of this Plea Agreement and the date of sentencing, the United States, in its discretion, may consider that new criminal conduct as a breach of this Plea Agreement.

## **ENTIRETY OF AGREEMENT**

36.     This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties. The defendant understands and agrees that neither the defendant nor the United States have any obligation or understanding other than those set forth specifically in this written agreement.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date:   January 30, 2026

/s/ Kasee S. Heisterhagen
Kasee S. Heisterhagen
Assistant United States Attorney
Chief, Criminal Division

19

Rev. 9/2025

Date: __January 30, 2026__          /s/ Justin Roller
                                     _____
                                     Justin Roller
                                     Assistant United States Attorney
                                     Deputy Chief, Criminal Division

I have consulted with my counsel and fully understand all my rights with respect to the offenses charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: 1/30/26          _____
                       Nia Bradley
                       Defendant

I am the attorney for the defendant. I have fully explained the defendant's rights to the defendant with respect to the offenses charged in the Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with the defendant. To my knowledge, the defendant's decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, the defendant's decision to stipulate to the facts is an informed, intelligent, and voluntary one.

Date: 1/30/26          _____
                       ChaLea Tisdale
                       Attorney for Defendant

20

Rev. 9/2025

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 25-00073-TFM |
| | ) | |
| NIA BRADLEY | ) | |

## FACTUAL RESUME

The defendant, **NIA BRADLEY** ("**BRADLEY**"), admits the allegations of Counts One, Two, Three, Four, Twelve and Twenty-Nine of the Indictment.

## ELEMENTS OF THE OFFENSE

**BRADLEY** understands that to prove a violation of Title 18, United States Code, Section 1349, as charged in Count One of the Indictment, the United States must prove:

First:        two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit mail fraud, wire fraud, and/or bank fraud, as charged in the Indictment; and

Second:     the Defendant knew the unlawful purpose of the plan and willfully joined in it.

**BRADLEY** understands that to prove a violation of Title 18, United States Code, Section 371, as charged in Count Two of the Indictment, the United States must prove:

First:        two or more persons in some way agreed to accomplish a shared and unlawful plan;

Second:     the Defendant knew the unlawful purpose of the plan and willfully joined in it;

Third:      during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the Indictment; and

Fourth:     the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

1

Rev. 9/2025

**BRADLEY** understands that to prove a violation of Title 18, United States Code, Section 1956(h), as charged in Count Three of the Indictment, the United States must prove:

First:     the Defendant knowingly conducted or tried to conduct financial transactions;

Second:  the Defendant knew that the money or property involved in the transaction were the proceeds of some kind of unlawful activity;

Third:    money or property did come from an unlawful activity, specifically wire and bank fraud as charged in the indictment; and

Fourth:  the Defendant knew that the transaction was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or the control of the proceeds.

**BRADLEY** understands that to prove a violation of Title 18, United States Code, Section 1343, as charged in Count Four of the Indictment, the United States must prove:

First:     the Defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

Second:  the false pretenses, representations, or promises were about a material fact;

Third:    the Defendant acted with the intent to defraud; and

Fourth:  the Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

**BRADLEY** understands that to prove a violation of Title 18, United States Code, Section 1344(2), as charged in Count Twelve of the Indictment, the United States must prove:

First:     the Defendant knowingly carried out or attempted to carry out a scheme to get money, assets, or other property from a financial institution by using false or fraudulent pretenses, representations, or promises about a material fact;

Second:  the false or fraudulent pretenses, representations, or promises were material;

Third:    the Defendant intended to defraud someone; and

Rev. 9/2025

Fourth:        the financial institution was federally insured.

**BRADLEY** understands that to prove a violation of Title 26, United States Code, Section 7206(1), as charged in Count Twenty-Nine of the Indictment, the United States must prove:

First:        the Defendant made or caused to be made an IRS form 1040 for the tax year 2020;

Second:        the IRS form 1040 contained a written declaration that it was made under the penalties of perjury;

Third:        when the Defendant made or helped to make the IRS form 1040, the Defendant knew it contained false material information;

Fourth:        when the Defendant did so, the Defendant intended to do something the Defendant knew violated the law; and

Fifth:        the false matter in the IRS form 1040 related to a material statement.

## **Offense Conduct**

**BRADLEY** admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for **BRADLEY's** plea of guilty. The statement of facts does not contain each and every fact known to **BRADLEY** and to the United States concerning the defendant's involvement in the charges set forth in the Plea Agreement.

From in or about 2018 through 2022, **BRADLEY**, Randy Burden ("BURDEN"), Steve Jones ("JONES"), Larry Knight ("KNIGHT"), Conspirator-1 ("CC-1"), Conspirator-3 ("CC-3"), and Conspirator-4 ("CC-4") each conspired with at least one other person, including one another, and acted, aiding and abetting and aided and abetted by one another and others, to commit mail, wire, and bank fraud which victimized the Water Works and Sewer board of the City of Prichard ("the Company"), a public utility located in the Southern Division of the Southern District of

Rev. 9/2025

Alabama.  The Company served approximately 8,000 residential and 2,000 commercial clients, and the Company's services were degraded as a result of the money illegally diverted from necessary repairs, maintenance, and upgrades to the water and sewer systems.  The Company relied upon funding from water and sewer service payments from its clients as well as an approximate $55 million bond it obtained through Synovus Bank[1] in November 2019.  **BRADLEY** committed individual offenses of wire fraud, and all defendants committed additional bank fraud offenses.  **BRADLEY** conspired with others to launder proceeds of the crimes committed related tax offenses.  ~~**BRADLEY** and other unindicted conspirators acted to destroy evidence of the fraud, and all defendants made efforts to hide the fraud from discovery.~~       KSH   GT   NB

     **BRADLEY** and BURDEN worked as employees of the Company and oversaw outside contractors who were paid to complete repair and maintenance work for the benefit of the Company, and had authority to approve and did approve requisitions and corresponding payments outside contractors for work purportedly done for the benefit of the Company.  In support of payments to contractors by the Company, independent contractors would submit invoices indicating the work performed, and approving authorities at the Company would prepare requisitions documenting the approval of payments for the work.  Payments were made via check and wire transfer.  CC-1 and CC-4 were board members of the Company, legally classified as public officials[2], and had authority to and did approve requisitions and associated payments to outside contractors for work purportedly done for the benefit of the Company.

---

[1] At the request of Synovus Bank in 2023, the Company has been placed into a receivership based on breach of contract allegations regarding the bond.  See https://casetext.com/case/the-water-works-sewer-bd-of-city-of-prichard-v-synovus-bank.

[2] Board members of the Company qualify as public officials according to an attorney for the Company and a state legal opinion.  Langham v. State, 662 So. 2d 1201, 1205 (Ala. Crim. App. 1994) ("After examining the 'original' definition of 'public official,' we hold that the Prichard Water Works and Sewer Board, regardless of whether it is a creature of incorporation or whether it was established by city ordinance, is a 'utility board' and, thus, subject to the

4

JONES, KNIGHT, and CC-3 were outside contractors who received money for purported work for the Company, when in fact they received money from the Company for work which was never completed, did not benefit the Company, and was based on false and fraudulent representations to the Company. As directed by CC-1 and initiated and caused by **BRADLEY**, CC-3 created a fictious company (the "Fictitious Construction Company") to falsely and fraudulently receive money from the Company for purported repairs to the water and sewer system that were never completed. The Fictitious Construction Company never completed any work in the Southern District of Alabama or elsewhere and was created for the sole purpose of defrauding the Company. ~~KNIGHT used his company, which performed some legitimate work, to falsely and fraudulently receive money from the Company for purported repairs to the water and sewer system that were never completed and did not benefit the Company~~. KNIGHT's company was K&M Quality Paint Company, L.L.C. or a variation thereof ("K&M Quality Paint"). JONES performed automotive repair work for the Company through a company he owned and operated and received money for that work. The fraud committed by JONES which is the subject of the Indictment was performed in his own name, as the invoices submitted by JONES and payments to JONES referenced him individually with no mention of his automotive repair company. JONES falsely and fraudulently received money from the Company for purported repairs to the water and sewer system that were never completed and did not benefit the Company. **BRADLEY** also made ~~fraudulent~~ credit card transactions using credit and/or debit cards of the Company to pay for repairs and maintenance on residential buildings owned by BURDEN and **BRADLEY** through a joint business they owned and operated, B&B Enterprise GP or a variation thereof ("B&B Enterprise").

_____

state ethics law.").

5

All defendants communicated with one another and additional conspirators via in person, telephone, and electronic communications, including text messages, emails, and additional third-party cellular telephone applications, including in certain cases using coded language to hide the purposes of the criminal activity. The electronic communications caused wire transmissions across state lines and impacting interstate commerce. All defendants transported large sums of U.S. currency to pay other members of the criminal conspiracy and beneficiaries of the criminal activity and for their own personal use of the illegally obtained monies.

In committing the fraud, U.S. Postal Service mailboxes and mailings were used by CC-3, the Company, and other persons involved in the fraud. The mailboxes were located in the Southern District of Alabama, and the mailings originated from and culminated in the Southern District of Alabama. Further, interstate wires between the Southern District of Alabama and locations outside of Alabama, including financial transactions and communications, were transmitted to perpetuate the criminal scheme. Interstate wires originated, transited, and culminated in the Southern District of Alabama. Additionally, through the criminal scheme, the Company's money was falsely and fraudulently diverted from the Company's accounts held at financial institutions, as defined in 18 U.S.C. § 20. ~~the United States alleges~~ KSH CF

In sum, ^the following independent contractor sub-schemes were used to steal money from the Company and enrich the defendants (and others): as to the tables below NB

| Loss Amounts and Associated Criminal Counts Per Sub-Scheme | | | |
|---|---|---|---|
| Sub-Scheme ("SS") (Indictment Sections) | Defendants and Co-Conspirators | Counts | Loss Amount |
| CC-3 and Fictitious Construction Company ("SS-1") (¶ 22(k) – (dd)) | **Bradley**, CC-1, CC-3, and CC-4 | 1, 2, 4-8, 10, 12, 13, 20, 21, 27-29, 32 | $1,007,116.34 |
| Jones Purported Work on Water and Sewer System ("SS-2") (¶ 22(ee) – (rr)) | **Bradley**, Burden, and Jones | 1, 3, 9, 11, 18, 19, 24, 30, 31, 33 | $960,851.41 |

Rev. 9/2025

| Loss Amounts and Associated Criminal Counts Per Sub-Scheme | | | |
|---|---|---|---|
| Sub-Scheme ("SS") (Indictment Sections) | Defendants and Co-Conspirators | Counts | Loss Amount |
| Larry Knight and K&M Quality Paint ("SS-3") (¶ 22(ss) – (ccc)) | **Bradley**, Burden, Knight, and CC-4 | 1, 15-17, 22, 23, 25, 26 | $370,216.51 |
| Credit Card Use for benefit of B&B Enterprise ("SS-5") (¶ 22(ooo) – (qqq)) | **Bradley** and Burden | 1 | $30,275.38 |
| Total Loss Amount: | | | $2,368,459.64 |

Further, based on their involvement in one or more sub-schemes, the defendants are directly and individually accountable for the below-listed loss amounts, and are responsible for $2,459,279.39, the total minimum approximate loss amount due to the overall scheme outlined in Count 1 to steal money from the Company via a conspiracy to commit mail, wire, and bank fraud.

| Loss Amount Directly Attributed to Individual Defendants | | |
|---|---|---|
| Defendant | Sub-Scheme Involved In | Loss Amount |
| **Bradley** | All (SS-1 through SS-5) | $2,368,459.64 |
| **Burden** | SS-2 through SS-5 | $1,452,163.05 |
| **Jones** | SS-2 | $960,851.41 |
| **Knight** | SS-3 | $370,216.51 |

Regarding the individual splits of money received by each defendant for each fraud scheme, the only split which is precisely known and well sourced is the sub-scheme involving the Fictitious Construction Company (SS-1), in which **BRADLEY** received approximately 30% of the proceeds according to several cooperators (CC-1 and CC-3). In that scheme, CC-1 and CC-4 also received approximately 30% and CC-3 received approximately 10%.

The tax loss table per year for **BRADLEY** is as follows:

| Tax Loss Table for Bradley and Jones | | | |
|---|---|---|---|
| Calendar Year(s) | Defendant | Count(s) | Tax Loss Amount (not including interest) |
| 2018, 2019, 2020 | **Bradley** | 2 | $70,218 |
| 2018 | **Bradley** | 2, 27 | $2,508 |
| 2019 | **Bradley** | 2, 28 | $21,052 |
| 2020 | **Bradley** | 2, 29 | $46,658 |

7

| Tax Loss Table for Bradley and Jones | | | |
|---|---|---|---|
| Calendar Year(s) | Defendant | Count(s) | Tax Loss Amount (not including interest) |
| 2020 | **Bradley (CC-3 return)** | 2, 32 | $169,417 |

The total tax loss attributable **BRADLEY** is $239,635, with $169,417 associated with CC-3's return, which false and fraudulent return **BRADLEY** assisted in creating and filing.

  **BRADLEY** committed the following overt acts and completed crimes. **BRADLEY**, the operations manager of the Company, approved contracts with independent contractors for repairs and maintenance to the water and sewer system, approved requisitions and invoices for those contractors, and approved payments to independent contractors. **BRADLEY** approved purported work by and authorized false and fraudulent payments to JONES, KNIGHT, and CC-3, knowing then and there the invoices requesting payment for work and requisitions approving payment for work to the water and sewer system were false and fraudulent and that no such work had been performed and that no such work benefitted the Company. **BRADLEY** approved payments for outside contract work, caused checks to be issued from the Company's Regions and Hancock Whitney accounts, and caused interstate wire transfers to be initiated from the Company's Hancock Whitney account, all of which caused the false and fraudulent transfer of money from the Company to **BRADLEY** and other defendants and persons. **BRADLEY's** payment approvals were made either independently or along with other approvers depending on the monetary amount of the payment. **BRADLEY** created and assisted in the creation of false and fraudulent invoices, requisitions, and related documentation, in order to falsely and fraudulently create the justification for such payments. **BRADLEY** requested that checks and wires be individually created, rather than through a batch process as applied to other contractors, to facilitate faster payments to contractors whom she assisted in defrauding the Company.

Rev. 9/2025

*KSH* [handwritten] *others* [handwritten]

For certain contractor schemes involving ~~JONES, KNIGHT, and CC-3~~, **BRADLEY** received kickbacks as payment for her efforts in fraudulently and falsely diverting money from the Company for work that was not performed and did not benefit the Company. **BRADLEY** and BURDEN laundered at least $50,000 into accounts and properties owned by B&B Enterprise, a company they owned and operated. **BRADLEY** filed materially false personal tax returns and related filings and assisted and directed CC-3 to file materially false tax returns and related filings in order to avoid paying taxes due and owing to the United States and to conceal the criminal activity that victimized the Company and its clients. **BRADLEY** and BURDEN illegally diverted work and money to benefit B&B Enterprise, a company they owned and operated, fraudulent and falsely causing the Company to pay for the work performed and monies diverted to the benefit of B&B Enterprise and laundered illegal proceeds through B&B Enterprise.

*KSH* [handwritten]

*contractors and vendors* [handwritten]

**BRADLEY** rushed payments to ~~JONES, KNIGHT, and CC-3~~ during the last several months of her employment period with the Company, which ended in or about April 2021, to maximize the fraud proceeds she and her co-conspirators received. Particularly, **BRADLEY** approved and caused false and fraudulent payments from the Company to JONES in the amount of approximately $739,647.70 between in or about September 2020 and in or about March 2021; to KNIGHT in the amount of approximately $723,062.02 between in or about September 2020 and in or about April 2021; and to CC-3 in the amount of approximately $412,124.18 between in or about September 2020 and in or about February 2021.

**BRADLEY** aided and abetted, was aided and abetted by, and conspired with BURDEN, JONES, KNIGHT, CC-1, CC-3, and CC-4 to commit the offenses charged in Counts 1, 3, 4, and 12, and committed the tax offenses charged in Counts 2 and 29. **BRADLEY** conspired with CC-1 and CC-3 regarding Count 2.

9

Rev. 9/2025

Regarding Count 1, **BRADLEY** conspired with the other defendants and others to commit wire, bank, and mail fraud, causing a loss of at least approximately $2,459,279.39 through the several sub-schemes summarized above. **BRADLEY** knew the unlawful purposes of the plan and willfully joined in it.

Regarding Count 2, **BRADLEY** conspired with CC-1 and CC-3 to defraud the United States out of revenue due and owing, to wit: personal income taxes. **BRADLEY** knew the unlawful purpose of the plan and willfully joined in it. The loss to the United States in taxes due and owing is listed above.

Regarding Count 3, **BRADLEY** and BURDEN conspired with one another and JONES to commit concealment money laundering (18 U.S.C. § 1956(a)(1)(B)(i)) and spending offenses (18 U.S.C. § 1957); performed actions including but not limited to cash transfers and deposits and additional bank transfers of money to conceal the nature, location, source, ownership, and control of the proceeds of violations of mail, wire, and bank fraud, and conspiracy to commit the same, against the Company, involving at least approximately $960,851.41; and conducted monetary transactions in criminal derived property of values of greater than $10,000 per transaction, including the purchase of nine real properties by B&B Enterprise, a company owned and operated by BURDEN and **BRADLEY**. **BRADLEY** and BURDEN conducted cash deposits into bank accounts they controlled individually at Wells Fargo locations including for thousands of dollars in deposits at Wells Fargo branches located within several miles of JONES' business location at 3616 Moffett Road, Mobile, AL 36618. **BRADLEY** and BURDEN also moved proceeds from the above-referenced violations from their personal bank accounts into the bank account of B&B Enterprise, which were later used to purchase, improve, and maintain real properties owned and operated B&B Enterprise. **BRADLEY** and BURDEN used proceeds from these violations to

10

Rev. 9/2025

purchase properties located at 1462 Avon Circle, Mobile, AL 36605; 1561 Colgin Street, Mobile, AL 36605; and 1073 Cloverdale Drive, Mobile, AL 36606; as well as additional properties, through B&B Enterprise, a company they owned and controlled.[3] Several of these properties were sold by B&B Enterprise and were valued at over $10,000 at the time of sale. **BRADLEY** knew the unlawful purposes of the plan and willfully joined in it.

Regarding Count 4, **BRADLEY** aided and abetted and was aided and abetted by CC-1, CC-3, and CC-4 in committing wire fraud against the Company, which resulted in interstate wires of the money detailed in this count. **BRADLEY** knowingly devised and participated in the scheme to defraud the Company by using false and fraudulent pretenses, representations, and promises, which were material; acted with the intent to defraud the Company; and caused wire communications to be transmitted in interstate commerce to help carry out the scheme to defraud.

Regarding Count 12, **BRADLEY** committed bank fraud against the Company, which resulted in false and fraudulent transfers from accounts of the Company held by financial institutions in the amounts listed in those counts. **BRADLEY** knowingly carried out and attempted to carry out a scheme to get money from a federally insured financial institution by using false and fraudulent pretenses, representations, and promises about material facts; and acted with the intent to defraud the Company.

Regarding Count 29, **BRADLEY** failed to disclose income illegally earned through the criminal scheme against the Company in her personal tax returns and by making material false statements in those tax filings as outlined in those counts. **BRADLEY** made and caused to be made the form 1040, which contained written declarations that they were made under penalties of

---

[3] The parties to this Factual Resume dispute whether 1405 Cloverleaf Circle North, Mobile, AL 36605, was purchased with proceeds from the fraud schemes.

Rev. 9/2025

perjury; did so knowing that the form contained material false information; and intended to do something the defendant knew was against the law.  The loss to the United States in taxes due and owing is listed above.

**BRADLEY's** tax filing in Count 29 was filed from the Southern District of Alabama.

AGREED TO AND SIGNED.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date:  January 30, 2026          */s/ Kasee S. Heisterhagen*
                                Kasee S. Heisterhagen
                                Assistant United States Attorney
                                Chief, Criminal Division

Date:  January 30, 2026          */s/ Justin Roller*
                                Justin Roller
                                Assistant United States Attorney
                                Deputy Chief, Criminal Division

Date: _____                   _____
                                Nia Bradley
                                Defendant

Date: _____                   _____
                                ChaLea Tisdale
                                Attorney for Defendant

12

Rev. 9/2025