(2)

KSH

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED IN OPEN COURT
AUG 2? 2026
CHRISTOPHER EKMAN
CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIM. NO. 25-CR-00073 |
| | * | USAO NO. 2022R00096 |
| v. | * | |
| | * | |
| NIA BRADLEY, | * | |
| RANDY BURDEN, | * | VIOLATIONS: 18 U.S.C. § 1349 |
| STEVE JONES, | * | 18 U.S.C. § 371 |
| LARRY KNIGHT, and | * | 18 U.S.C. § 1956(h) |
| DEJUAN LAMAR | * | 18 U.S.C. § 1343 |
| | * | 18 U.S.C. § 1344(2) |
| | * | 26 U.S.C. § 7206(1) |
| | * | 26 U.S.C. § 7206(2) |
| | * | |
| | * | **FORFEITURE NOTICE** |

## SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES:**

## INTRODUCTION

At times material to this Superseding Indictment:

1. The Water Works and Sewer Board of the City of Prichard (referred to herein as "the Board" or "the Prichard Water Board") was a public utility board providing water and sewer services to Prichard, Alabama, and surrounding areas, within the Southern Division of the Southern District of Alabama. The Board was governed by a board of approximately five members, all of whom were appointed by the City Council of the City of Prichard, Alabama (referred to herein as "Prichard City Council"). Prichard City Council was also composed of five members, each of whom represented an individual district in Prichard. Board members of the Board represented the entire City of Prichard, Alabama, and, after the Prichard City Council appointed the board members of the Board, the board members operated

autonomously, with terms lasting approximately six years. The six-year terms of the board members of the Board were staggered by approximately two years.

2. The Board served approximately 8,000 residential and 2,000 commercial clients, including individual people, families, and businesses, by providing water and sewer services in exchange for regular payments from those clients.

3. The Board received funding for its business through client payments for water and sewer services, as well as from additional outside funding, including a bond in the approximate amount of $55 million beginning in or about November 2019 and held and administered by Synovus Bank, which bond monies were to be used to complete specific projects of the Board and for capitalized expenses, such as significant repairs.

4. For certain repairs and maintenance to the water and sewer system of the Board, the Board contracted with outside contractors. The Board paid those contractors upon receipt of invoices for the contract work through a written requisition process, an internal process whereby at least one employee or board member of the Board approved payment to outside contractors.

5. Defendant **NIA BRADLEY** was employed by the Board as the operations manager and was in charge of Board operations including oversight of repairs and maintenance to the water and sewer systems, which repairs and maintenance were to be completed through either employees of the Board or outside contractors, whose contracts **NIA BRADLEY** oversaw, managed, and authorized payment.

6. Defendant **RANDY BURDEN** was employed by the Board as the public service supervisor and was in charge of maintenance employees of the Board who performed repairs and maintenance to the water and sewer systems, and if they were unable to perform any repairs and

maintenance internally, would and did direct and oversee certain repairs and maintenance by outside contractors of the Board.

7. Defendants **NIA BRADLEY and RANDY BURDEN** owned and operated a for-profit company, B&B Enterprise GP or a variation of that name (referred to herein as "B&B Enterprise"), which purchased, maintained, and rented residences in the Southern District of Alabama.

8. Defendants **NIA BRADLEY and RANDY BURDEN** approved the work and payment requests of outside contractors, knowing that certain work was not completed and did not benefit the Board, that other work benefitted them personally and through B&B Enterprise and did not benefit the Board, and received kick-back payments from the outside contractors.

9. Defendant **STEVE JONES** contracted with the Board in his own name to perform work on its behalf to the water and sewer system, which work was not performed and did not benefit the Board, and received payments from the Board for work which was not performed and did not benefit the Board. **STEVE JONES** also contracted with the Board through his business entity, Unlimited Automotive Repairs or a variation of that name (referred to herein as "Unlimited Automotive"), to perform automotive repair work.

10. Defendant **LARRY KNIGHT** contracted with the Board to perform work on its behalf, which work, in whole or in part, was not performed and did not benefit the Board, and received payments from the Board for work which was not performed and did not benefit the Board. **LARRY KNIGHT** contracted with the Board using his own name and through his business entity, K&M Quality Paint Company, L.L.C. or a variation of that name (referred to herein as "K&M Quality Paint").

11. Defendant **DEJUAN LAMAR** contracted with the Board to perform work on its behalf, which work, in whole or in part, was not performed and did not benefit the Board, and received payments from the Board for work which was not performed and did not benefit the Board. **DEJUAN LAMAR** contracted with the Board using his own name and through his business entity, Lamar Custom Millwork or a variation of that name (referred to herein as "Lamar Custom Millwork").

12. Unindicted Co-Conspirator 1 (referred to herein as "CC-1"), whose name is known to the grand jury and who acted as a co-conspirator and aided and abetted in the crimes against the Board, served on the board of the Board.

13. Unindicted Co-Conspirator 3 (referred to herein as "CC-3"), whose name is known to the grand jury and who acted as a co-conspirator and aided and abetted in the crimes against the Board, contracted with the Board to perform work on its behalf, which work, in whole or in part, was not performed and did not benefit the Board, and received payments from the Board for work which was not performed and did not benefit the Board.

14. Unindicted Co-Conspirator 4 (referred to herein as "CC-4"), whose name is known to the grand jury and who acted as a co-conspirator and aided and abetted in the crimes against the Board, served on the board of the Board.

15. As part of the scheme to defraud the Board, a fictitious construction company (referred to herein as "Fictitious Construction Company") was a sole proprietorship business created by CC-3, which company performed no business and no work either in the Southern District of Alabama or

anywhere else, and received payments from the Board for work which was not performed and did not benefit the Board.

16. Wells Fargo Bank, N.A. ("Wells Fargo"), Synovus Bank ("Synovus"), Regions Bank ("Regions"), and Hancock Whitney Bank ("Hancock Whitney") were all licensed and active banks; defined as financial institutions under Title 18, United States Code, Section 20; operated in the Southern District of Alabama and across state lines; and were insured by the Federal Deposit Insurance Corporation ("FDIC").

17. Any and all wire transfers involving Hancock Whitney in the Southern District of Alabama, including both incoming and outgoing wire transfers, caused one or more interstate wires to be transmitted between the Southern District of Alabama and states outside of Alabama, including but not limited to wire transfers to and from bank branches located in the Southern District of Alabama.

**COUNT ONE**
**Conspiracy to Commit Mail, Wire, and Bank Fraud**
**Title 18, United States Code, Section 1349**

18. Paragraphs 1 through 17 of this Superseding Indictment are hereby incorporated, as if set forth fully herein.

**The Conspiracy**

19. Beginning on a date unknown, but no later than in or about April 2018, and continuing to a date unknown, but no earlier than in or about May 2022, within the Southern District of Alabama, and elsewhere, the defendants,

**NIA BRADLEY,**
**RANDY BURDEN,**
**STEVE JONES,**
**LARRY KNIGHT,**
**and**
**DEJUAN LAMAR,**

did knowingly combine, conspire, confederate, and agree with at least one other person to commit mail fraud, in violation of Title 18, United States Code, Section 1341; wire fraud, in violation of Title 18, United States Code, Section 1343; and bank fraud, in violation of Title 18, United States Code, Section 1344(2).

**Manner and Means**

*General*

20. The defendants sought to accomplish the objects of the conspiracy through the following manner and means, among others. For the purpose of this Count, the phrase "criminal activity" in paragraph 21 shall refer to the conspiracy identified in this Count.

21. It was part of the criminal activity that:

a. **NIA BRADLEY**, as part of her duties with the Board, approved invoices with independent contractors to perform maintenance and repair work on behalf of and for the benefit of the Board, and approved requisitions independently for work below a certain monetary threshold and jointly with at least one additional approver for work exceeding that monetary threshold;

b. **NIA BRADLEY** approved work by and authorized false and fraudulent payments to **STEVE JONES, LARRY KNIGHT, and DEJUAN LAMAR,** and others, both individually and to the companies of **LARRY KNIGHT and DEJUAN LAMAR**, for work which was not performed and did not benefit the Board;

c. **NIA BRADLEY** received a portion of the false and fraudulent payments to **STEVE JONES, LARRY KNIGHT**, and CC-3 as kick-back payments for approving the payments to **STEVE JONES, LARRY KNIGHT,** and CC-3;

d. **RANDY BURDEN**, as part of his duties with the Board, oversaw the work of independent contractors who purportedly performed maintenance and repair work on behalf of and for the benefit of the Board, and received kick-back payments from **STEVE JONES and NIA BRADLEY** for work which was approved by **NIA BRADLEY and RANDY BURDEN** and paid by the Board, which work was not performed and did not benefit the Board;

e. **STEVE JONES, LARRY KNIGHT, and DEJUAN LAMAR** each cashed the full amount of a majority of checks each received from the Board rather than depositing a portion of the check amounts in an account at a financial institution, which was inconsistent with the normal business practice of contractors retaining earnings to pay for labor, materials, and other costs, and documenting those expenses through a paper payment trail;

f. **STEVE JONES, LARRY KNIGHT, and DEJUAN LAMAR** were paid directly by **NIA BRADLEY and RANDY BURDEN** via independently created and delivered checks, rather than through the normal course of business by batch created and mailed checks as other contractors were paid;

g. **STEVE JONES** received approximately $739,647.70 in payments from the Board between in or about September 2020 and in or about March 2021, which were approved by **NIA BRADLEY**, shortly before her resignation in or about April 2021;

h. **LARRY KNIGHT** received approximately $723,062.02 in payments from the Board between in or about September 2020 and in or about April 2021, which were approved by **NIA BRADLEY**, shortly before her resignation in or about April 2021;

i. **DEJUAN LAMAR** received approximately $90,819.75 in payments from the Board between in or about September 2020 and in or about December 2020, which were approved by **NIA BRADLEY**, shortly before her resignation in or about April 2021;

j. **NIA BRADLEY, RANDY BURDEN, STEVE JONES, LARRY KNIGHT, and DEJUAN LAMAR**, and others, performed additional actions and omissions to achieve the purposes of the criminal activity and to shield the full scope of the criminal activity from discovery;

*Invoices, Requisitions, and Payments Involving NIA BRADLEY, CC-1, CC-3, and CC-4*

k. **NIA BRADLEY**, CC-1, CC-3, and CC-4 engaged in an independent contractor fraud scheme involving approximately $1,007,116.34 in false and fraudulent payments to the Fictitious Construction Company and CC-3 for work which was not performed and did not benefit the Board;

l. CC-1, at the request of **NIA BRADLEY**, would and did request that CC-3 create a fake business for the purpose of receiving money from the Board in exchange for repair work for the water and sewer system, which work was not performed by CC-3 or any business CC-3 controlled;

m. CC-1, at the request of **NIA BRADLEY**, would and did request CC-3 to participate in a false and fraudulent contractor scheme, whereby CC-3, through a company CC-3 created, would and did receive payments from the Board for work that was not performed by CC-3 or any business CC-3 controlled, and would and did distribute a portion of those payments to CC-1 while retaining a percentage of the monies received from the Board as payment for CC-3's role in the criminal activity;

n. CC-3 would and did create the Fictitious Construction Company, a fictitious construction business which had no employees, no contractors, no equipment, and no materials, and performed no construction work and no other work of any kind either in the Southern District of Alabama or elsewhere;

o. CC-3 would and did seek insurance for the Fictitious Construction Company in order to create the false impression that the Fictitious Construction Company was an operating business;

p. CC-3 would and did open and use a business bank account at Wells Fargo for the Fictitious Construction Company, falsely claiming to be a real company that performed construction services, and would and did use CC-3's personal bank accounts at Wells Fargo, for the purpose of receiving payments from the Board for work that was not performed by the Fictitious Construction Company;

q. CC-3 would and did open and use a United States Post Office box in the Southern District of Alabama, for the purpose of receiving mail through the U.S. Postal Service, including mail from Wells Fargo and the Board regarding the Fictitious Construction Company, and in order to hide CC-3's association with the Fictitious Construction Company and the Board;

r. **NIA BRADLEY** would and did create and cause to be created false and fraudulent invoices and requests for work to be performed, which work was not performed, in order to justify false and fraudulent payments by the Board to CC-3 and the Fictitious Construction Company;

s. **NIA BRADLEY,** CC-1, and CC-4 would and did approve requisitions and accompanying payments to CC-3 and the Fictitious Construction Company knowing then and there that such work was not performed and did not benefit the Board and that such payments would result in false and fraudulent payments to CC-3 and kick-back payments from CC-3 to **NIA BRADLEY**, CC-1, and CC-4;

t. CC-3, aided and abetted by the actions of **NIA BRADLEY**, CC-1, and CC-4, would and did deposit checks drawn from the Board's bank accounts in the custody and control of Regions and Hancock Whitney into bank accounts controlled by CC-3 at Wells Fargo and would and did cash checks from the Board, which were in the custody and control of Hancock Whitney bank, all of which was for work that was not performed and was based on fraudulent and false invoices, requests for work, and requisitions;

u. CC-3, aided and abetted by the actions of **NIA BRADLEY**, CC-1, and CC-4, would and did receive wire transfers issued from the Board's bank account in the custody and control of Hancock Whitney, causing wires in interstate commerce between the Southern District of Alabama and at least one location outside of Alabama, into at least one bank account CC-3 controlled at Wells Fargo bank, all of which was for work that was not performed and did not benefit the Board and which was based on fraudulent and false invoices, requests for work, and requisitions;

v. CC-1 would and did direct CC-3 to cash certain checks from the Board and withdraw monies received from the Board, for work that was not performed by CC-3 or the Fictitious Construction Company and did not benefit the Board, in order to pay **NIA BRADLEY**, CC-1, CC-3, and CC-4 proceeds of the criminal activity.

w. CC-1 and CC-3 would and did communicate in person and through electronic and telephonic means, including through coded language intended to hide their involvement in the criminal activity, to achieve the purposes of the criminal activity;

x. **NIA BRADLEY**, CC-1, and CC-4 would and did communicate in person and through electronic and telephonic means, including through coded language intended to hide their involvement in the criminal activity, to achieve the purposes of the criminal activity;

y. CC-1 and CC-3 would and did transport and distribute U.S. currency, which were proceeds of the criminal activity, in order to achieve the purposes of the criminal activity;

z. **NIA BRADLEY**, CC-1, and CC-4 would and did transport and distribute U.S. currency, which were proceeds of the criminal activity, in order to achieve the purposes of the criminal activity;

aa. CC-3, aided and abetted by **NIA BRADLEY** and CC-1, would and did file materially false and fraudulent tax filings with the IRS in order to conceal the criminal activity and its purposes and in order to avoid paying taxes due and owing to the United States;

bb. **NIA BRADLEY**, CC-1, and CC-4 would and did file materially false and fraudulent tax filings with the IRS in order to conceal the criminal activity and its purposes and in order to avoid paying taxes due and owing to the United States;

cc. CC-1 and CC-3 agreed to and did destroy evidence of the criminal activity, including electronic messages, knowing the messages constituted evidence of the criminal activity and other crimes and in order to hide their involvement in the criminal activity and other crimes;

dd. **NIA BRADLEY,** CC-1, CC-3, and CC-4, knowing then and there that no water and sewer system work was being performed in exchange for the money they received from the Board and taking actions to hide their association with the criminal activity and the purposes of the criminal activity, would and did receive, distribute, retain, and spend an aggregate total of approximately $1,007,116.34 from the Board, which was fraudulently received as a result of a false and fraudulent contractor scheme involving **NIA BRADLEY,** CC-1, CC-3, and CC-4;

*Invoices, Requisitions, and Payments*
*Involving NIA BRADLEY, RANDY BURDEN, and STEVE JONES*

ee. **NIA BRADLEY, RANDY BURDEN, and STEVE JONES** engaged in an independent contractor fraud scheme involving approximately $960,851.41 in false and fraudulent payments to **STEVE JONES** for work which was not performed and did not benefit the Board;

ff. **STEVE JONES**, despite working as an automotive mechanic, received false and fraudulent payments from the Board for purported repairs to the water and sewer system;

gg. **STEVE JONES** would and did receive false and fraudulent payments from the Board in his individual capacity;

hh. **RANDY BURDEN** falsely and fraudulently informed the Board that **STEVE JONES** was a legitimate contractor and performed work on behalf of the Board concerning the repair and maintenance of water and sewer systems;

ii. False and fraudulent invoices and requests were created for work to be performed, which work was not performed and did not benefit the Board, in order to justify false and fraudulent payments by the Board to **STEVE JONES**;

jj. **NIA BRADLEY and RANDY BURDEN** would and did approve requisitions for repairs to the water and sewer system and accompanying payments to **STEVE JONES** knowing then and there that such work was not performed and did not benefit the Board and would result in false and fraudulent payments to **STEVE JONES** and kick-back payments from **STEVE JONES** to **NIA BRADLEY and RANDY BURDEN**;

kk. **STEVE JONES**, aided and abetted by the actions of **NIA BRADLEY and RANDY BURDEN**, would and did cash checks and also deposit checks drawn from the Board's bank accounts in the custody and control of Regions and Hancock Whitney into his account at a separate financial institution and would and did withdraw cash from his bank account, which money was provided as kick-back payments to **NIA BRADLEY and RANDY BURDEN** who then deposited the cash into their individual bank accounts at Wells Fargo, all of which was for work that was not performed, did not benefit the Board, and which was based on fraudulent and false invoices, requests for work, and requisitions;

ll. **NIA BRADLEY and RANDY BURDEN** would and did transfer money falsely and fraudulently obtained through the criminal activity from their personal bank accounts at Wells Fargo bank to a bank account held at Wells Fargo in the name of B&B Enterprise, a company they owned and operated;

mm. **NIA BRADLEY and RANDY BURDEN** would and did use money falsely and fraudulently obtained through the criminal scheme to purchase at least one rental property in the

name of B&B Enterprise, a company they owned and operated, and would and did sell rental properties owned and operated by B&B Enterprise to persons related to **NIA BRADLEY and RANDY BURDEN**;

nn. **NIA BRADLEY and RANDY BURDEN** would and did communicate in person and through electronic and telephonic means in order to achieve the purposes of the criminal activity;

oo. **RANDY BURDEN and STEVE JONES** would and did communicate in person and through telephonic means in order to achieve the purposes of the criminal activity;

pp. **STEVE JONES, NIA BRADLEY, and RANDY BURDEN** would and did transport and distribute U.S. currency, which were proceeds of the criminal activity, in order to achieve the purposes of the criminal activity;

qq. **NIA BRADLEY and STEVE JONES** would and did file materially false and fraudulent tax filings with the IRS in order to conceal the criminal activity and its purposes and in order to avoid paying taxes due and owing to the United States;

rr. **STEVE JONES, NIA BRADLEY, and RANDY BURDEN** knowing then and there that no water and sewer system work was being performed in exchange for the money they received from the Board and taking actions to hide their association with the criminal activity and its purposes, would and did receive, distribute, retain, and spend an aggregate total of approximately $960,851.41 from the Board, which was fraudulently received as a result of a false and fraudulent vendor scheme involving **STEVE JONES, NIA BRADLEY, and RANDY BURDEN**;

*Invoices, Requisitions, and Payments Involving*
*NIA BRADLEY, RANDY BURDEN, LARRY KNIGHT, and CC-4*

ss. **NIA BRADLEY, RANDY BURDEN, and LARRY KNIGHT** would and did engage in an independent contractor fraud scheme involving approximately $370,216.51 in false and fraudulent payments to **LARRY KNIGHT** and K&M Quality Paint for work which was not performed and did not benefit the Board;

tt. **LARRY KNIGHT** would and did receive false and fraudulent payments from the Board for purported repairs to the water and sewer system, when in fact **LARRY KNIGHT** performed work for and to the personal benefit of **NIA BRADLEY**, CC-4 and CC-4's relative, and B&B Enterprise, a business owned and operated by **NIA BRADLEY and RANDY BURDEN**;

uu. **LARRY KNIGHT** would and did use his company K&M Quality Paint to receive false and fraudulent payments from the Board;

vv. False and fraudulent invoices and requests were created for work to be performed for the Board, which work was not performed for the benefit of the Board, in order to justify false and fraudulent payments by the Board to **LARRY KNIGHT** and K&M Quality Paint;

ww. **NIA BRADLEY** and CC-4 would and did approve requisitions, a resolution, and accompanying payments to **LARRY KNIGHT** and K&M Quality Paint knowing then and there that such work was not performed for the Board and did not benefit the Board and that such payments would result in false and fraudulent payments to **LARRY KNIGHT** and also illegally benefit **NIA BRADLEY, RANDY BURDEN**, B&B Enterprise, the company owned and operated by **NIA BRADLEY and RANDY BURDEN,** and CC-4, through work performed for their benefit and

illegally paid by the Board and through kick-back payments from **LARRY KNIGHT** to **NIA BRADLEY**;

xx. **LARRY KNIGHT**, aided and abetted by the actions of **NIA BRADLEY**, would and did cash checks and also deposit checks drawn from the Board's bank accounts in the custody and control of Regions and Hancock Whitney into his bank accounts at separate financial institutions and would and did withdraw cash, which money was provided as kick-back payments to **NIA BRADLEY** who then deposited the cash into her individual bank account at Wells Fargo, all of which was for work that was not performed for the Board, did not benefit the Board, and was based on fraudulent and false invoices, requests for work, and requisitions;

yy. **NIA BRADLEY and RANDY BURDEN** would and did benefit from the work performed by **LARRY KNIGHT**, which was paid illegally by the Board, that maintained and improved the properties owned and operated by B&B Enterprise, a business **NIA BRADLEY and RANDY BURDEN** owned and operated;

zz. **NIA BRADLEY and RANDY BURDEN** would and did communicate in person and through electronic and telephonic means to achieve the purposes of the criminal activity;

aaa. **NIA BRADLEY and LARRY KNIGHT** would and did communicate in person and through electronic and telephonic means to achieve the purposes of the criminal activity;

bbb. **NIA BRADLEY and LARRY KNIGHT** would and did transport and distribute U.S. currency, which were proceeds of the criminal activity, in order to achieve the purposes of the criminal activity;

ccc. **LARRY KNIGHT and NIA BRADLEY** knowing then and there that no water and sewer system work was being performed in exchange for the money they received from

the Board and taking actions to hide their association with the criminal activity and the purposes of the criminal activity, would and did receive, distribute, retain, and spend an aggregate total of approximately $370,216.51 in value, either as work performed or money received, from the Board, which was fraudulently received as a result of a false and fraudulent vendor scheme involving **LARRY KNIGHT, NIA BRADLEY, RANDY BURDEN**, and CC-4.

*Invoices, Requisitions, and Payments Involving*
*NIA BRADLEY, RANDY BURDEN, and DEJUAN LAMAR*

ddd. **NIA BRADLEY and DEJUAN LAMAR** would and did engage in an independent contractor fraud scheme involving approximately $90,819.75 in false and fraudulent payments to **DEJUAN LAMAR** and Lamar Custom Millwork for work which was not performed and did not benefit the Board;

eee. **DEJUAN LAMAR** would and did receive false and fraudulent payments from the Board for purported repairs to the water and sewer system, when in fact **DEJUAN LAMAR** performed work for and to the personal benefit of **NIA BRADLEY** and B&B Enterprise, a business owned and operated by **NIA BRADLEY and RANDY BURDEN**;

fff. **DEJUAN LAMAR** would and did use his company, Lamar Custom Millwork, to receive false and fraudulent payments from the Board;

ggg. False and fraudulent invoices and requests were created for work to be performed for the Board, which work was not performed for the benefit of the Board, in order to justify false and fraudulent payments by the Board to **DEJUAN LAMAR** and Lamar Custom Millwork;

hhh. **NIA BRADLEY and RANDY BURDEN** would and did approve requisitions and accompanying payments to **DEJUAN LAMAR** and Lamar Custom Millwork knowing then and there that such work was not performed for the Board and did not benefit the Board and that such payments would result in false and fraudulent payments to **DEJUAN LAMAR** and also illegally benefit **NIA BRADLEY, RANDY BURDEN**, and B&B Enterprise, the company of **NIA BRADLEY and RANDY BURDEN,** through work falsely and fraudulently performed for their benefit and paid by the Board;

iii. **DEJUAN LAMAR**, aided and abetted by the actions of **NIA BRADLEY**, would and did cash checks drawn from the Board's bank accounts in the custody and control of Regions and Hancock Whitney, which was for work that was not performed for the Board, did not benefit the Board, and was based on false and fraudulent invoices, requests for work, and requisitions;

jjj. **NIA BRADLEY and RANDY BURDEN** would and did benefit from the work performed by **DEJUAN LAMAR,** which was paid illegally by the Board and which maintained and improved the properties owned and controlled by B&B Enterprise, a business **NIA BRADLEY and RANDY BURDEN** owned and operated;

kkk. **NIA BRADLEY and RANDY BURDEN** would and did communicate in person and through electronic and telephonic means to achieve the purposes of the criminal activity;

lll. **NIA BRADLEY and DEJUAN LAMAR** would and did communicate in person and through electronic and telephonic means to achieve the purposes of the criminal activity;

mmm. **NIA BRADLEY and DEJUAN LAMAR** would and did transport and distribute U.S. currency, which were proceeds of the criminal activity, in order to achieve the purposes of the criminal activity;

nnn. **DEJUAN LAMAR, NIA BRADLEY, and RANDY BURDEN** knowing then and there that no water and sewer system work was being performed in exchange for the money received from the Board and taking actions to hide their association with the criminal activity and the purposes of the criminal activity, would and did receive, distribute, retain, and spend an aggregate total of approximately $90,819.75 in value, either as work performed or money received, from the Board, which was fraudulently received as a result of a false and fraudulent vendor scheme involving **DEJUAN LAMAR, NIA BRADLEY, and RANDY BURDEN**;

*Purchase Card Payments Involving*
*NIA BRADLEY and RANDY BURDEN*

ooo. **NIA BRADLEY** in order to pay for repairs, maintenance, and improvements to properties owned and operated by B&B Enterprise, a business owned and operated by **NIA BRADLEY and RANDY BURDEN,** made false and fraudulent transactions using at least one purchase card issued on behalf of the Board;

ppp. **NIA BRADLEY** would and did create and cause to be created false and fraudulent invoices and requests for work to be performed for the Board, and did approve associated requisitions, which work was not performed for the benefit of the Board, in order to justify false and fraudulent payments for the benefit of B&B Enterprise, a company owned and operated by **NIA BRADLEY and RANDY BURDEN**; and

qqq. **NIA BRADLEY and RANDY BURDEN** knowing then and there that no water and sewer system work was being performed in exchange for the money diverted from the Board and taking actions to hide their association with the criminal activity and the purposes of the criminal activity, would and did receive, distribute, and spend at least approximately $30,275.38 from

the Board, which was fraudulently received as a result of a false and fraudulent purchase card scheme involving **NIA BRADLEY and RANDY BURDEN**.

All in violation of Title 18, United States Code, Section 1349.

**COUNT TWO**
**Conspiracy to Defraud the United States**
**Title 18, United States Code, Section 371**

22. Paragraphs 1 through 17 of this Superseding Indictment are hereby incorporated, as if set forth fully herein.

**The Conspiracy**

23. Beginning on a date unknown, but no later than in or about April 2018, and continuing to a date unknown, but no earlier than in or about May 2022, within the Southern District of Alabama, and elsewhere, the defendant,

**NIA BRADLEY,**

did unlawfully, voluntarily, intentionally, and knowingly combine, conspire, confederate, and agree with CC-1, CC-3, and with other individuals both known and unknown to the grand jury to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the IRS in the ascertainment, computation, assessment, and collection of revenue: to wit, personal income taxes. It was the purpose and object of the conspiracy to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the IRS in the ascertainment, computation, assessment, and collection of the revenue: to wit, personal income taxes. In defrauding the United States, **NIA BRADLEY**, CC-1, CC-3, and their co-conspirators intended to unjustly enrich themselves by preparing and filing false U.S. Individual Income Tax Returns, IRS

Forms 1040, for themselves and for others that fraudulently decreased their tax liabilities and, for certain tax filings, fraudulently inflated their refunds.

**Manner and Means**

24. The defendant sought to accomplish the objects of the conspiracy through the following manner and means, among others. For the purpose of this Count, the manner and means includes the "criminal activity" in paragraph 21, which paragraph is hereby incorporated as if set forth fully herein, and shall refer to the conspiracy identified in this Count.

25. In addition, it was part of the conspiracy that:

a. **NIA BRADLEY** and CC-1 would and did prepare and electronically file false U.S. Individual Income Tax Returns, IRS Forms 1040, and associated filings in the Southern District of Alabama. These returns were false in that the returns underreported and omitted income that **NIA BRADLEY** and CC-1 received from the Board through the Fictitious Construction Company and CC-3, fraudulently decreasing **NIA BRADLEY** and CC-1's tax liabilities and fraudulently increasing their refunds.;

b. **NIA BRADLEY** would and did, on at least three occasions, file her personal income tax return and any associated filings electronically from a computer in the Southern District of Alabama;

c. CC-1 would and did, on at least four occasions, file CC-1's personal income tax return and any associated filings electronically from a computer in the Southern District of Alabama;

d. CC-1 would and did communicate with CC-3 regarding whether CC-3 should disclose income to the Fictitious Construction Company from the Board in CC-3's personal tax filings;

e. CC-1 would and did coach and encourage CC-3 to commit tax fraud by failing to report illegal income received by CC-3 and the Fictitious Construction Company from the Board;

f. **NIA BRADLEY** would and did aid and assist in the filing of false U.S. Individual Income Tax Return and associated schedules for CC-3, which contained false and fraudulent items. The false and fraudulent items included but were not limited to: false expenses of the Fictitious Construction Company.;

g. **NIA BRADLEY** would and did aid and assist in the filing of false U.S. Individual Income Tax Returns and associated filings for herself, which contained false and fraudulent items. The false and fraudulent items included but were not limited to: false total income that underreported and omitted income she received from the Board through the False Fictitious Company and CC-3.; and

h. CC-1 would and did aid and assist in the filing of false U.S. Individual Income Tax Returns and associated filings for CC-1, which contained false and fraudulent items. The false and fraudulent items included but were not limited to: false total income that underreported and omitted income CC-1 received from the Board through the False Fictitious Company and CC-3.

**Overt Acts**

26. In furtherance of the conspiracy, and to achieve its objectives, the following overt acts, among others, were committed within the Southern District of Alabama, and elsewhere:

a. In or about 2018, CC-1, at the request of **NIA BRADLEY**, recruited CC-3 to participate in an illegal scheme wherein CC-3 would and did create a fake company and pose as a contractor for the purpose of illegally diverting money from the lawful purposes of the Board toward illegal payments to **NIA BRADLEY**, CC-1, CC-3, and CC-4 though the fake Board, Fictitious Construction Company.

b. In or about 2018, CC-3, at the request of CC-1, created the Fictitious Construction Company in order to receive money from the Board, knowing then and there that Fictitious Construction Company did not perform construction or any other work and would not perform any work;

c. Between in or about 2018 through in or about 2021, **NIA BRADLEY** and CC-4 each received approximately $302,134.90 in criminal proceeds from CC-1, who received the money from CC-3 and the Fictitious Construction Company, which money was received through a fraud scheme perpetrated against the Board;

d. Between in or about 2018 through in or about 2021, CC-1 received approximately $302,134.90 in criminal proceeds from CC-3 and the Fictitious Construction Company, received through a fraud scheme perpetrated against the Board;

e. Between on or about August 22, 2018 and on or about August 27, 2018, CC-3 received and deposited a check from the Board in the amount of approximately $4,985.00 into CC-3's Wells Fargo personal account, for work that was purportedly completed by the Fictitious Construction Company, knowing then and there that no such work had been performed by the Fictitious Construction Company;

f. Between on or about October 24, 2018 and on or about October 25, 2018, CC-3 received and deposited a check from the Board in the amount of approximately $33,547.66 into CC-3's Wells Fargo personal account, for work that was purportedly completed by the Fictitious Construction Company, knowing then and there that no such work had been performed by the Fictitious Construction Company;

g. In or about 2019, CC-3 received an IRS Form 1099 from the Board stating the total amount of money CC-3 received, through the Fictitious Construction Company, from the Board in 2018, knowing then and there that no such work had been performed by the Fictitious Construction Company to justify the payments;

h. On or about January 19, 2019, CC-1 filed a materially false and fraudulent IRS Form 1040 with the IRS regarding the 2018 tax year, which fraudulently omitted the approximately $20,894.30 CC-1 received from the Board through CC-3 and the Fictitious Construction Company, knowing that such filing was materially false and fraudulent for failing to disclose that income;

i. On or about March 4, 2019, **NIA BRADLEY** filed a materially false and fraudulent IRS Form 1040 with the IRS regarding the 2018 tax year, which fraudulently omitted the approximately $20,894.30 **NIA BRADLEY** received from the Board through CC-3 and the Fictitious Construction Company, knowing that such filing was materially false and fraudulent for failing to disclose that income;

j. Between on or about May 30, 2019 and on or about June 3, 2019, CC-3 received and deposited a check from the Board in the amount of approximately $34,287.00 into CC-3's Wells Fargo personal account, for work that was purportedly completed by the Fictitious

Construction Company, knowing then and there that no such work had been performed by the Fictitious Construction Company;

k. Between on or about July 31, 2019 and on or about August 1, 2019, CC-3 received and deposited a check from the Board in the amount of approximately $37,600.00 into CC-3's Wells Fargo personal account, for work that was purportedly completed by the Fictitious Construction Company, knowing then and there that no such work had been performed by the Fictitious Construction Company;

l. Between on or about October 2, 2019 and on or about October 3, 2019, CC-3 received and deposited a check from the Board in the amount of approximately $34,050.03 into CC-3's Wells Fargo personal account, for work that was purportedly completed by the Fictitious Construction Company, knowing then and there that no such work had been performed by the Fictitious Construction Company;

m. On or about February 7, 2020, **NIA BRADLEY** filed a materially false and fraudulent IRS Form 1040 with the IRS regarding the 2019 tax year, which fraudulently omitted the approximately $81,218.42 **NIA BRADLEY** received from the Board through CC-3 and the Fictitious Construction Company, knowing that such filing was materially false and fraudulent for failing to disclose that income;

n. On or about February 18, 2020, CC-1 filed a materially false and fraudulent IRS Form 1040 with the IRS regarding the 2019 tax year, which fraudulently omitted the approximately $81,218.42 CC-1 received from the Board through CC-3 and the Fictitious Construction Company, knowing that such filing was materially false and fraudulent for failing to disclose that income;

o. On or about March 11, 2020, CC-3 applied for and received a U.S. Post Office box in the name of Fictitious Construction Company, listing CC-3's Mobile, Alabama address and CC-3's name, telephone number, and email account, and confirming CC-3's identity using several forms of identification.

p. On or about May 1, 2020, CC-3 applied for and opened a business bank account with Wells Fargo Bank at a branch in Mobile, Alabama, which was opened in CC-3's name and in the name of the Fictitious Construction Company, and listed CC-3's residence in the Southern District of Alabama as the mailing address.

q. On or about May 2, 2020, CC-3 filed a materially false and fraudulent IRS Form 1040 with the IRS regarding the 2019 tax year, which fraudulently omitted the approximately $270,728.08 CC-3 received from the Board through the Fictitious Construction Company, knowing that such filing was materially false and fraudulent for failing to disclose that income;

r. Between on or about May 15, 2020 and on or about May 19, 2020, CC-3 received and deposited a check from the Board in the amount of approximately $72,581.12 into CC-3's Wells Fargo business account, for work that was purportedly completed by the Fictitious Construction Company, knowing then and there that no such work had been performed by the Fictitious Construction Company;

s. Between on or about July 15, 2020 and on or about July 17, 2020, CC-3 received and deposited a check from the Board in the amount of approximately $47,395.00 into CC-3's Wells Fargo business account, for work that was purportedly completed by the Fictitious Construction Company, knowing then and there that no such work had been performed by the Fictitious Construction Company;

t. On or about September 11, 2020, CC-3 caused and received a wire transfer from the Board, particularly from an account at Hancock Whitney, in the amount of approximately $79,530.06 into CC-3's Wells Fargo business account, for work that was purportedly completed by the Fictitious Construction Company, knowing then and there that no such work had been performed by the Fictitious Construction Company;

u. Between on or about October 19, 2020 and on or about October 20, 2020, CC-3 cashed a check from the Board in the amount of approximately $27,345.12 at Hancock Whitney, where the check was drawn, for work that was purportedly completed by the Fictitious Construction Company, knowing then and there that no such work had been performed by the Fictitious Construction Company;

v. On or about December 4, 2020, CC-3 caused and received a wire transfer from the Board, particularly from an account at Hancock Whitney, in the amount of approximately $73,250.00 into CC-3's Wells Fargo business account, for work that was purportedly completed by the Fictitious Construction Company, knowing then and there that no such work had been performed by the Fictitious Construction Company;

w. On or about February 25, 2021, CC-3 caused and received a wire transfer from the Board, particularly from an account at Hancock Whitney, in the amount of approximately $115,852.00 into CC-3's Wells Fargo business account, for work that was purportedly completed by the Fictitious Construction Company, knowing then and there that no such work had been performed by the Fictitious Construction Company;

x. In or about 2021, CC-3 caused and received an IRS Form 1099 from the Board stating the total amount of money CC-3 received, through the Fictitious Construction Company, from

the Board in 2020, knowing then and there that no such work had been performed by the Fictitious Construction Company to justify the payments;

y. On or about March 11, 2021, **NIA BRADLEY** filed a materially false and fraudulent IRS Form 1040 with the IRS regarding the 2020 tax year, which fraudulently omitted the approximately $147,638.58 **NIA BRADLEY** received from the Board through CC-3 and the Fictitious Construction Company, knowing that such filing was materially false and fraudulent for failing to disclose that income;

z. On or about March 16, 2021, CC-1 filed a materially false and fraudulent IRS Form 1040 with the IRS regarding the 2020 tax year, which fraudulently omitted the approximately $147,638.58 CC-1 received from the Board through CC-3 and the Fictitious Construction Company, knowing that such filing was materially false and fraudulent for failing to disclose that income;

aa. Between on or about between May 6, 2021, and on or about May 17, 2021, CC-3 filed, with the assistance of **NIA BRADLEY**, a materially false and fraudulent IRS Form 1040 and Schedule C document with the IRS regarding the 2020 tax year, which falsely claimed expenses to the Fictitious Construction Company, knowing that such filing was materially false and fraudulent because the Fictitious Construction Company performed no work and incurred no expenses;

bb. Between on or about May 28, 2021, and on or about June 7, 2021, CC-3 filed, with the assistance of another person, a materially false and fraudulent IRS form 1040X and Schedule C document with the IRS regarding the 2018 tax year, which falsely claimed expenses to the Fictitious Construction Company, knowing that such filing was materially false and fraudulent because the Fictitious Construction Company performed no work and incurred no expenses;

cc. On or about February 4, 2022, CC-1 filed a materially false and fraudulent IRS Form 1040 with the IRS regarding the 2021 tax year, which fraudulently omitted the approximately $52,383.60 CC-1 received from the Board through CC-3 and the Fictitious Construction Company, knowing that such filing was materially false and fraudulent for failing to disclose that income;

dd. In or about March 2022, CC-1 deleted electronic messages on CC-1's cellular telephone between CC-1, **NIA BRADLEY**, and CC-4, knowing that they constituted evidence of the conspiracy and additional crimes and for the purpose of destroying that evidence; and

ee. On or about March 24, 2022, at the request of CC-1, CC-3 deleted electronic messages on CC-3's cellular telephone between CC-1 and CC-3, knowing that they constituted evidence of the conspiracy and additional crimes and for the purpose of destroying that evidence.

All in violation of Title 18, United States Code, Section 371.

**COUNT THREE**
**Conspiracy to Commit Money Laundering**
**Title 18, United States Code, Section 1956(h)**

27. Paragraphs 1 through 17 of this Superseding Indictment are hereby incorporated as if set forth fully herein.

**The Conspiracy**

28. Beginning on a date unknown, but no later than in or about April 2018, and continuing to a date unknown, but no earlier than in or about May 2022, within the Southern District of Alabama, Southern Division, and elsewhere, the defendants,

**NIA BRADLEY,**
**RANDY BURDEN,**
**and**
**STEVE JONES,**

did knowingly and intentionally combine, conspire, and agree with each other to conduct and attempt to conduct offenses in violation of Title 18, United States Code, Sections 1956 and 1957, including:

a. to conduct and attempt to conduct a financial transaction affecting interstate commerce, which transaction represented the proceeds of unlawful activity, including violations of Title 18, United States Code, Sections 1341 (Mail Fraud), 1343 (Wire Fraud), 1344(2) (Bank Fraud), and 1349 (Conspiracy to Commit Mail, Wire, and Bank Fraud), knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the unlawful activity, and knowing that such property represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b. to knowingly engage and attempt to engage in a monetary transaction in criminal derived property of a value greater than $10,000 derived from unlawful activity, including violations of Title 18, United States Code, Sections 1341 (Mail Fraud), 1343 (Wire Fraud), 1344(2) (Bank Fraud), and 1349 (Conspiracy to Commit Mail, Wire, and Bank Fraud), in violation of Title 18, United States Code, Section 1957.

**Manner and Means**

29. The defendants sought to accomplish the objects of the conspiracy through the following manner and means, among others. Paragraph 21, Sections (a) through (j) and (ee) through (qqq), of this Superseding Indictment are hereby incorporated, as if set forth fully herein.

30. For the purpose of this Count, the phrase "criminal activity" in paragraph 21 shall refer to the conspiracy identified in this Count.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS FOUR THROUGH SEVEN**
**Wire Fraud**
**Title 18, United States Code, Section 1343**

31. Paragraphs 1 through 17 of this Superseding Indictment are hereby incorporated, as if set forth fully herein.

**The Scheme**

32. Beginning on a date unknown, but no later than in or about August 2018, and continuing to a date unknown, but no earlier than in or about May 2022, within the Southern District of Alabama, and elsewhere, the defendant,

**NIA BRADLEY,**

aiding and abetting and aided and abetted by at least one other person, knowingly devised and intended to devise a scheme to defraud the Board and to obtain money by means of materially false and fraudulent pretenses, representations, and promises.

**Purpose of the Scheme**

33. The purpose of the scheme was for the defendant,

**NIA BRADLEY,**

aiding and abetting and aided and abetted by at least one other person, to unjustly enrich herself, and others, by diverting monies for her own personal benefit and the personal benefit of others, through the use of a false and fraudulent contractor scheme, whereby the defendant and others created at least one fictitious business and additional false and fraudulent invoices, requests for service, and requisitions, in order to fraudulently obtain payments from the Board, resulting in financial losses to the Board and depletion of the water and sewer systems of Prichard, Alabama.

**Manner and Means**

34. The defendants sought to accomplish the objects of the criminal scheme through the following manner and means, among others. It was part of the scheme that the defendant and others engaged in the criminal activity set forth in Paragraph 21, Sections (a) through (c) and (k) through (dd), hereby incorporated as if set forth fully herein; and

35. **NIA BRADLEY** and others performed additional actions and omissions to achieve the purposes of the criminal activity and to shield the criminal activity from discovery.

**The Wire Transactions**

36. On or about each of the dates set forth below for each count, within the Southern District of Alabama, and elsewhere, the defendant,

**NIA BRADLEY,**

for the purpose of executing the scheme described above, and attempting to do so, aided and abetted by and aiding and abetting at least one other person, caused to be transmitted by means of wire communication in interstate commerce the writings, signs, and signals described below for each count, each transmission constituting a separate count:

| Count | Date (On or About) | Description |
|---|---|---|
| 4 | September 11, 2020 | A wire transaction in the amount of approximately $79,530.06 from the Board's Hancock Whitney bank account to a Wells Fargo account controlled by CC-3 |
| 5 | December 4, 2020 | A wire transaction in the amount of approximately $73,250.00 from the Board's Hancock Whitney bank account to a Wells Fargo account controlled by CC-3 |

| **Count** | **Date (On or About)** | **Description** |
|---|---|---|
| 6 | February 10, 2021 | A wire transaction in the amount of approximately $58,760.00 from the Board's Hancock Whitney bank account to a Wells Fargo account controlled by CC-3 |
| 7 | February 25, 2021 | A wire transaction in the amount of approximately $115,852.00 from the Board's Hancock Whitney bank account to a Wells Fargo account controlled by CC-3 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

**COUNTS EIGHT THROUGH TWENTY-SIX**
**Bank Fraud**
**Title 18, United States Code, Section 1344(2)**

37. Paragraphs 1 through 17 of this Superseding Indictment are hereby incorporated, as if set forth fully herein.

**The Scheme**

38. Beginning on a date unknown, but no later than in or about April 2018, and continuing to a date unknown, but no earlier than in or about May 2022, within the Southern District of Alabama, and elsewhere, the defendants,

**NIA BRADLEY,**
**RANDY BURDEN,**
**STEVE JONES,**
**LARRY KNIGHT,**
**and**
**DEJUAN LAMAR,**

aiding and abetting and aided and abetted at least one other person, knowingly devised and intended to devise a scheme to defraud the Board and to obtain money from bank accounts of the Board, which were in the custody and control of Regions and Hancock Whitney, both financial institutions whose

deposits were then federally insured by the FDIC, by means of materially false and fraudulent pretenses, representations, and promises.

**Purpose of the Scheme**

39. The purpose of the scheme was for the defendants,

**NIA BRADLEY,**
**RANDY BURDEN,**
**STEVE JONES,**
**LARRY KNIGHT,**
**and**
**DEJUAN LAMAR,**

aiding and abetting and aided and abetted by at least one other person, to unjustly enrich themselves, and others, by diverting monies for their own personal benefit and the personal benefit of others, through the use of false and fraudulent contractor schemes, whereby the defendants and others created at least one fictitious business and additional false and fraudulent invoices, requests for service, and requisitions in order to fraudulently obtain payments from the Board, resulting in financial losses to the Board and depletion of the water and sewer systems of Prichard, Alabama, and surrounding areas.

**Manner and Means**

40. The defendants sought to accomplish the objects of the criminal scheme through the following manner and means, among others. It was part of the scheme that the defendants and others engaged in the criminal activity set forth in Paragraph 21, hereby incorporated as if set forth fully herein.

**The Fraudulent Transactions**

41. On or about each of the dates set forth below for each count, within the Southern District of Alabama, and elsewhere, the defendants, as set forth below for each count, for the purpose

of executing the scheme described above, and attempting to do so, aided and abetted by and aiding and abetting at least one other person, caused the below-described false and fraudulent transactions from the custody and control of the Board's bank accounts as set forth for each count:

| **Count** | **Date** (On or About) | **Defendant(s)** | **Description** |
|---|---|---|---|
| 8 | June 3, 2019 | **NIA BRADLEY** | A check deposited in the amount of approximately $34,287.00 drawn from the Board's Regions bank account |
| 9 | November 7, 2019 | **NIA BRADLEY, RANDY BURDEN, and STEVE JONES** | A check deposited in the amount of approximately $13,893.17 drawn from the Board's Regions bank account |
| 10 | January 22, 2020 | **NIA BRADLEY** | A check deposited in the amount of approximately $67,293.00 drawn from the Board's Regions bank account |
| 11 | November 17, 2020 | **NIA BRADLEY, RANDY BURDEN, and STEVE JONES** | A check cashed in the amount of approximately $13,850.00 drawn from the Board's Hancock Whitney bank account |
| 12 | September 11, 2020 | **NIA BRADLEY** | A wire transfer in the amount of approximately $79,530.06 drawn from the Board's Hancock Whitney bank account |
| 13 | December 4, 2020 | **NIA BRADLEY** | A wire transfer in the amount of approximately $73,250.00 drawn from the Board's Hancock Whitney bank account |
| 14 | December 16, 2020 | **NIA BRADLEY, RANDY BURDEN, and DEJUAN LAMAR** | A check cashed in the amount of approximately $14,100.00 drawn from the Board's Hancock Whitney bank account |

| **Count** | **Date (On or About)** | **Defendant(s)** | **Description** |
|---|---|---|---|
| 15 | January 7, 2021 | **NIA BRADLEY and LARRY KNIGHT** | A check cashed in the amount of approximately $56,463.19 drawn from the Board's Hancock Whitney bank account |
| 16 | January 14, 2021 | **NIA BRADLEY and LARRY KNIGHT** | A check cashed in the amount of approximately $56,463.18 drawn from the Board's Hancock Whitney bank account |
| 17 | January 22, 2021 | **NIA BRADLEY and LARRY KNIGHT** | A check cashed in the amount of approximately $62,115.92 drawn from the Board's Hancock Whitney bank account |
| 18 | February 23, 2021 | **NIA BRADLEY, RANDY BURDEN, and STEVE JONES** | A check cashed in the amount of approximately $39,860.00 drawn from the Board's Hancock Whitney bank account |
| 19 | February 24, 2021 | **NIA BRADLEY, RANDY BURDEN, and STEVE JONES** | A check cashed in the amount of approximately $64,380.00 drawn from the Board's Hancock Whitney bank account |
| 20 | February 10, 2021 | **NIA BRADLEY** | A wire transfer in the amount of approximately $58,760.00 drawn from the Board's Hancock Whitney bank account |
| 21 | February 25, 2021 | **NIA BRADLEY** | A wire transfer in the amount of approximately $115,852.00 drawn from the Board's Hancock Whitney bank account |
| 22 | February 26, 2021 | **NIA BRADLEY and LARRY KNIGHT** | A check cashed in the amount of approximately $36,926.37 drawn from the Board's Hancock Whitney bank account |

| Count | Date (On or About) | Defendant(s) | Description |
|---|---|---|---|
| 23 | March 5, 2021 | **NIA BRADLEY and LARRY KNIGHT** | A check deposited in the amount of approximately $18,000.00 drawn from the Board's Hancock Whitney bank account |
| 24 | March 17, 2021 | **NIA BRADLEY, RANDY BURDEN, and STEVE JONES** | A check cashed in the amount of approximately $57,620.00 drawn from the Board's Hancock Whitney bank account |
| 25 | April 15, 2021 | **NIA BRADLEY and LARRY KNIGHT** | A check cashed in the amount of approximately $18,974.44 drawn from the Board's Hancock Whitney bank account |
| 26 | April 15, 2021 | **NIA BRADLEY and LARRY KNIGHT** | A check cashed in the amount of approximately $62,115.92 drawn from the Board's Hancock Whitney bank account |

All in violation of Title 18, United States Code, Sections 1344(2) and 2.

## COUNT TWENTY-SEVEN
## Making and Subscribing a False 1040 Tax Return
## Title 26, United States Code, Section 7206(1)

42. On or about March 4, 2019, in the Southern District of Alabama, the defendant,

**NIA BRADLEY,**

did willfully make and subscribe, and file and cause to be filed with the IRS, a false U.S. Individual Income Tax Return, Form 1040 for calendar year 2018, which was verified by a written declaration that it was made under the penalties of perjury and which the defendant did not believe to be true and correct as to every material matter. That tax return reported, among other false items, that the correct

total income in Line 6 of the form 1040 was $44,127, whereas, as the defendant then and there knew, the correct total income was understated by over $20,000.

All in violation of Title 26, United States Code, Section 7206(1).

**COUNT TWENTY-EIGHT**
**Making and Subscribing a False 1040 Tax Return**
**Title 26, United States Code, Section 7206(1)**

43. On or about February 7, 2020, in the Southern District of Alabama, the defendant,

**NIA BRADLEY,**

did willfully make and subscribe, and file and cause to be filed with the IRS, a false U.S. Individual Income Tax Return, Form 1040 for calendar 2019, which was verified by a written declaration that it was made under the penalties of perjury and which the defendant did not believe to be true and correct as to every material matter. That tax return reported, among other false items, that the correct total income in Line 7b of the form 1040 was $124,801, whereas, as the defendant then and there knew, the correct total income was understated by over $80,000.

All in violation of Title 26, United States Code, Section 7206(1).

**COUNT TWENTY-NINE**
**Making and Subscribing a False 1040 Tax Return**
**Title 26, United States Code, Section 7206(1)**

44. On or about March 11, 2021, in the Southern District of Alabama, the defendant,

**NIA BRADLEY,**

did willfully make and subscribe, and file and cause to be filed with the IRS, a false U.S. Individual Income Tax Return, Form 1040 for calendar year 2020, which was verified by a written declaration that it was made under the penalties of perjury and which the defendant did not believe to be true and correct as to every material matter. That tax return reported, among other false items, that the correct

total income in Line 9 of the form 1040 was $140,497, whereas, as the defendant then and there knew, the correct total income was understated by over $140,000.

All in violation of Title 26, United States Code, Section 7206(1).

**COUNT THIRTY**
**Making and Subscribing a False 1040 Tax Return**
**Title 26, United States Code, Section 7206(1)**

45. Between on or about January 21, 2021 and on or about February 12, 2021, in the Southern District of Alabama, the defendant,

**STEVE JONES,**

did willfully make and subscribe, and file and cause to be filed with the IRS, a false U.S. Individual Income Tax Return, Form 1040 for calendar year 2019, which was verified by a written declaration that it was made under the penalties of perjury and which the defendant did not believe to be true and correct as to every material matter. That tax return reported, among other false items, that the correct total income in Line 7b of the Form 1040 was $7,613 dollars, whereas, as the defendant then and there knew, he received additional unreported income of over $30,000.

All in violation of Title 26, United States Code, Section 7206(1).

**COUNT THIRTY-ONE**
**Making and Subscribing a False 1040 Tax Return**
**Title 26, United States Code, Section 7206(1)**

46. Between on or about January 21, 2021 and on or about February 12, 2021, in the Southern District of Alabama, the defendant,

**STEVE JONES,**

did willfully make and subscribe and file and cause to be filed with the IRS, a false U.S. Individual Income Tax Return, Form 1040 for calendar year 2020, which was verified by a written declaration

that it was made under the penalties of perjury and which the defendant did not believe to be true and correct as to every material matter. That tax return reported, among other false items, that the correct total income in Line 9 of the Form 1040 was $16,641, whereas, as the defendant then and there knew, he received additional unreported income of over $500,000.

All in violation of Title 26, United States Code, Section 7206(1).

**COUNT THIRTY-TWO**
**Aiding and Abetting in Preparation and Presentation of a False 1040 Tax Return**
**Title 26, United States Code, Section 7206(2)**

47. Between on or about May 6, 2021, and on or about May 17, 2021, in the Southern District of Alabama, the defendant,

**NIA BRADLEY,**

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the IRS of a U.S. Individual Tax Return, Form 1040, for the calendar 2020 for a person identified above in paragraph 13 as CC-3, whose identity is known to the grand jury, which was false and fraudulent as to a material matter. That tax return reported, among other false items, that the correct taxable income in Line 15 of the Form 1040 was $2,602 and the total expenses in Line 28 of the Schedule C was $465,713, whereas, as the defendant then and there knew, the total expenses in Line 28 of the Schedule C was overstated by over $400,000, and the taxable income in Line 15 of the IRS Form 1040 was understated by over $400,000.

All in violation of Title 26, United States Code, Section 7206(2).

**COUNT THIRTY-THREE**
**Aiding and Abetting in Preparation and Presentation of a False 1040 Tax Return**
**Title 26, United States Code, Section 7206(2)**

48. On or about March 13, 2023, in the Southern District of Alabama, the defendant,

**LARRY KNIGHT,**

willfully aided and assisted in the preparation and presentation to the Internal Revenue Service of a U.S. Individual Income Tax Return, Form 1040, for himself for calendar year 2021, which was false and fraudulent as to a material matter. That tax return failed to report the income shown on an existing Form 1099 for calendar year 2021, despite knowing the income was required to be included on the return.

All in violation of Title 26, United States Code, Section 7206(2).

**FORFEITURE NOTICE**
**Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)**

49. The allegations contained in Counts One and Three through Twenty-Six of this Superseding Indictment are hereby incorporated, as if set forth fully herein, for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and (C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

50. Upon conviction of any of the offenses set forth in Counts One and Four through Twenty-Six of this Superseding Indictment, the defendants,

**NIA BRADLEY,**
**RANDY BURDEN,**
**STEVE JONES,**
**LARRY KNIGHT,**
**and**
**DEJUAN LAMAR,**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations, including but not limited to:

a. a money judgment in the amount of at least approximately $2,459,279.39;

b. all of the property located at 1561 Colgin Street, Mobile, Alabama 36605, the full legal description of which is:

> Lot 93, Colgin's Addition to Oakdale, according to plat thereof recorded in Deed Book 115, pages 360-361 of the records in the Office of the Judge of Probate of Mobile County, Alabama.
>
> EXCEPTING THEREFROM all interests in and to all oil, gas and other minerals in, on and/or under said real property and all rights in connection therewith which may have been granted, reserved or leased to others by instruments, of record, in the Office of the Judge of Probate of Mobile County, Alabama.;

c. all of the property located at 1462 Avon Circle, Mobile, Alabama 36605, the full legal description of which is:

> Lot 7, Block 7, Brookley Heights, Second Sector, according to plat thereof recorded in Map Book 4, pages 10-13, of the records in the Office of the Judge of Probate Court, Mobile County, Alabama.;

and

d. all of the property located at 1073 Cloverdale Drive, Mobile, Alabama 36606, the full legal description of which is:

> Lot 1, Homonoff's Addition to Cloverdale, according to plat thereof recorded in Map Book 6, Page 130 of the records in the Office of the Judge of Probate of Mobile County, Alabama.

51. Upon conviction of the offense set forth in Three of this Superseding Indictment, the defendants,

**NIA BRADLEY,**
**RANDY BURDEN,**
**and**
**STEVE JONES,**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and 982(a)(1), and Title 28, United States Code, Section 2461(c), any property, real or personal, involved in such offense, or any property traceable to such property, including but not limited to:

e. a money judgment in the amount of at least approximately $960,851.41;

f. all of the property located at 1561 Colgin Street, Mobile, Alabama 36605, the full legal description of which is:

> Lot 93, Colgin's Addition to Oakdale, according to plat thereof recorded in Deed Book 115, pages 360-361 of the records in the Office of the Judge of Probate of Mobile County, Alabama.
>
> EXCEPTING THEREFROM all interests in and to all oil, gas and other minerals in, on and/or under said real property and all rights in connection therewith which may have been granted, reserved or leased to others by instruments, of record, in the Office of the Judge of Probate of Mobile County, Alabama.;

g. all of the property located at 1462 Avon Circle, Mobile, Alabama 36605, the full legal description of which is:

> Lot 7, Block 7, Brookley Heights, Second Sector, according to plat thereof recorded in Map Book 4, pages 10-13, of the records in the Office of the Judge of Probate Court, Mobile County, Alabama.;

and

h. all of the property located at 1073 Cloverdale Drive, Mobile, Alabama 36606, the full legal description of which is:

> Lot 1, Homonoff's Addition to Cloverdale, according to plat thereof recorded in Map Book 6, Page 130 of the records in the Office of the Judge of Probate of Mobile County, Alabama.

52. If any of the forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property that cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON UNITED STATES GRAND JURY
SOUTHERN DISTRICT OF ALABAMA

SEAN P. COSTELLO
UNITED STATES ATTORNEY

By Kasee S. Heisterhagen
KASEE S. HEISTERHAGEN
Assistant United States Attorney
Chief, Criminal Division

AUGUST 2026